**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl West,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Mesa, City of, et al.,<br><br>　　　　　　Defendants. | No. CV-12-00657-PHX-DGC<br><br>**ORDER** |

Defendant City of Mesa has filed a motion to dismiss (Doc. 34) and Defendants United States, Brian Truchon, and Jeffery Jacobs have filed a joint motion to dismiss (Doc. 36). The motions are fully briefed. The Court will grant Mesa's motion and grant in part and deny in part the motion of the United States, Truchon, and Jacobs.[1]

**I.   Background.**

In February 2003, Plaintiff Carl West was tried and convicted in state court of conspiracy to commit armed robbery. Doc. 27-2, ¶ 25. The lead investigator was former FBI Special Agent Joe Gordwin. *Id.*, ¶14. Gordwin worked with Jeffery Jacobs, a Mesa Detective, on the FBI's Violent Street Gangs Task Force, a joint operation between the FBI and the Mesa Police Department. *Id.* Supervisory Special Agent Brian Truchon was Gordwin's supervisor at the time. *Id.*, ¶ 6.

---

[1] The issues are fully briefed, and the Court finds that oral argument will not aid in the resolution of this matter. *See* LR Civ. 7.2(f); Fed. R. Civ. P. 78(b).

While West was in prison, an investigation revealed misconduct by Gordwin. *Id.*, ¶¶ 18, 28. On May 28, 2008, Gordwin was indicted for several crimes including wire fraud and witness tampering. *Id.*, ¶ 27. Thereafter, West filed a motion for post-conviction relief, which was granted by the state court. *Id.*, ¶ 30. As a result, West was released from prison on February 11, 2011. *Id.* On August 22, 2013, all charges against him were dropped. *Id.*, ¶ 32.

On February 6, 2012, Plaintiff filed an action in state court alleging multiple violations relating to his investigation and trial. Doc. 1-2. The case was removed to this Court and assigned to Judge John Sedwick. Doc. 1. In July 2012, a motion to dismiss by Defendants Mesa and Jacobs was granted. Doc. 13. The ruling was appealed to the Ninth Circuit, which affirmed in part and vacated in part. Doc. 18.

On February 10, 2014, Plaintiff filed a second action in this Court (CV-14-254) that was eventually assigned to the undersigned judge. Given the overlap between the new case and Judge Sedwick's case, the two matters were consolidated as the present case. Plaintiff filed a motion for leave to file a Consolidated Complaint alleging nine counts against the United States, Gordwin, Truchon, Mesa, Jacobs, Duane Van Norman, and Kelvin Smith. Doc. 27. The Court granted the motion for counts one through five, but denied leave to assert counts six through nine. Doc. 29 at 2. Thus, only the following counts remain: (1) violation of 42 U.S.C. § 1983 – abuse of process, (2) violation of constitutional rights pursuant to *Bivens*, (3) violation of 42 U.S.C. § 1983 – malicious prosecution, (4) state law malicious prosecution, and (5) 28 U.S.C. § 1985 conspiracy. Doc. 27-2. Defendants move to dismiss all claims.[2]

**II.    Legal Standards.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th

---

[2] Plaintiff also filed CV-13-304-PHX-GWS, which is on appeal. Citations to documents in this case will be referred to as "Doc.," and those in other cases will contain a reference to the applicable case number.

Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiff brings § 1983 claims against all Defendants. To prevail on a claim under § 1983, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges, or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005). A plaintiff must also allege that he suffered a specific injury as a result of the conduct of a particular defendant, and must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

**III.   Analysis.**

    **A.   Scope Certification.**

On September 30, 2014, the United States submitted a Certification of Scope of Employment ("Scope Certification") under 28 U.S.C. § 2679(d)(1) certifying that Truchon and Jacobs were acting within the scope of their employment as "deemed" employees of the FBI. Doc. 34-3 at 2. The Scope Certification has the following effect:

> When a federal employee is sued for a wrongful or negligent act, the Federal Employees Liability Reform and Tort Compensation Act of 1988 (commonly known as the Westfall Act) empowers the Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose . . . ."

> Upon certification, the employee is dismissed from the action and the United States is substituted as defendant.

*Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995) (citing 28 U.S.C. § 2679(d)(1)). The action then proceeds under the Federal Tort Claims Act ("FTCA"). *Id.* "While the certification relieves the employee of responsibility, plaintiffs will confront instead a financially reliable defendant." *Id.* at 422. Importantly, a Scope Certification does not permit substitution for constitutional claims brought against federal officers. 28 U.S.C. § 2679(b)(2)(A); *see also Williams v. Brooks*, 945 F.2d 1322, 1325 n.3 (5th Cir. 1991) (noting that the FTCA, with the exception of constitutional claims, is the exclusive remedy for claims brought against federal officers acting in their office).

"Certification by the Attorney General is prima facie evidence that a federal employee was acting in the scope of [his] employment at the time of the incident and is conclusive unless challenged." *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995). "[T]he Attorney General's certification is 'the first, but not the final word' on whether the federal officer is immune from suit and correlatively, whether the United States is properly substituted as defendant." *Osborn v. Haley*, 549 U.S. 225, 246 (2007) (quoting *Lamagno*, 515 U.S. at 432). The party challenging a certification "bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence." *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993). Whether an employee was acting with the scope of his or her office is analyzed under *respondeat superior* principles "of the state in which the alleged tort occurred[.]" *Id.*

### 1. Truchon.

Plaintiff does not challenge the Scope Certification regarding FBI Supervisory Special Agent Truchon. It is thus undisputed that Truchon was acting within the scope of his employment at all relevant times. As a result, for Plaintiff's state common-law claims against Truchon, the United States will be substituted as the party defendant and the FTCA will provide Plaintiff's exclusive remedy. *See Wilson v. Drake*, 87 F.3d 1073,

1076 (9th Cir. 1996) (noting that "[t]he [Westfall Act], which amended the FTCA, provides that '[t]he remedy against the United States' under the FTCA 'is exclusive of any other civil action or proceeding for monetary damages'").

### 2. Jacobs.

With respect to Jacobs, Plaintiff argues the Scope Certification is invalid because Jacobs was not deputized as a federal employee under any statute, the task force was a joint operation between the FBI and Mesa, and the arrest was made by Jacobs in his capacity as a Mesa Detective. Doc. 43 at 2. Plaintiff asserts that participating in a joint task force does not convert a municipal officer into a federal employee.

"In determining whether a defendant is a federal employee, [courts] apply federal law." *Billings*, 57 F.3d at 800 (citing *Brandes v. United States*, 783 F.2d 895, 896 (9th Cir. 1986)). The FTCA defines "employee of the government" as "officers or employees of any federal agency . . . *and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently, in the service of the United States, whether with or without compensation.*" 28 U.S.C. § 2671 (emphasis added). State and local government employees may be "assigned to a Federal agency[.]" 5 U.S.C. § 3374(a). "During the period of assignment, a State or local government employee on detail to a Federal agency . . . is deemed an employee of the agency for the purpose of . . . the Federal Tort Claims Act and any other Federal tort liability statute[.]" *Id.* § 3374(c).

The Court finds that Plaintiff has failed to rebut the Scope Certification, which serves as prima facie evidence that Jacobs was acting within the scope of his employment as a federal employee. *See Billings*, 57 F.3d at 800. "Courts have consistently treated local law enforcement agents deputized as federal agents and acting as part of a federal task force as federal agents." *Colorado v. Nord*, 377 F. Supp. 2d 945, 949 (D. Colo. 2005). Although there is no indication that Jacobs was officially deputized as an employee of the FBI under any statute, such a finding is not necessary as § 3374 requires only that the State or local employee be "assigned to" or "on detail to" a federal agency. *See Farag v. United States*, 587 F. Supp. 2d 436, 471 (E.D.N.Y. 2008) (finding that city

detective was acting under federal law because he was working on the FBI's Joint Terrorism Task Force and referring to the language in 5 U.S.C. § 3374(c)(2) for support). Plaintiff does not dispute these facts. In fact, Plaintiff asserts that Jacobs was a Mesa Detective working with the FBI Violent Street Gangs Task Force, participating in monitoring FBI wiretaps, working closely with Gordwin, and acting as a federal agent "under color of federal authority *based on the task force*." Doc. 27-2, ¶¶ 14, 17, 50 (emphasis added). In addition, the arresting agency is not dispositive as to Jacobs' employment status. Because West was charged with state law crimes, it was reasonable for Mesa to make the arrest. The Court accordingly finds that the Scope Certification substitutes the United States as the party defendant for Plaintiff's state law claims against Jacobs.[3]

### B.   Count One – Abuse of Process Under § 1983.

Plaintiff brings a claim for abuse of process under § 1983 against Mesa, Truchon, and Jacobs. Doc. 27-2, ¶¶ 41-47. He alleges that "[t]he actions taken by the Defendants in presenting false testimony and evidence to procure a conviction violated Plaintiff's Constitutional Rights[.]" *Id.*, ¶ 42. He further alleges that Mesa is liable because it approved Jacobs and Gordwin's conduct. *Id.*, ¶ 45. This claim fails for several reasons.

First, Plaintiff fails to allege the essential elements of an abuse of process claim. "The elements of an abuse of process claim are (1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of proceedings." *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 (Ariz. Ct. App. 2004) (internal quotation marks omitted). "Abuse of process is a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the course of the process." *Donahue v.*

---

[3] Although Plaintiff fails to challenge the underlying merits of the Scope Certification, the Court finds that Jacobs was acting within scope of his federal employment under the *respondeat superior* principles of Arizona law. *See Green*, 8 F.3d at 698. "In Arizona, [t]he conduct of a servant is within the scope of employment if it is of the kind the employee is employed to perform, it occurs substantially within the authorized time and space limit, and it is actuated at least in part by a purpose to serve the master." *Smith v. Am. Exp. Travel Related Servs. Co.*, 876 P.2d 1166, 1170 (Ariz. Ct. App. 1994) (internal quotation marks omitted). Jacobs' conduct in investigating crimes is what he was hired to do and furthered the FBI's investigatory task force.

- 6 -

*Arpaio*, 869 F. Supp. 2d 1020, 1060 (D. Ariz. 2012) (internal quotation marks omitted). "'There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Id.* (quoting *Crackel*, 92 P.3d at 888). Even where the "litigation is motived by pure spite, that is insufficient to state an abuse of process claim where process is used only to accomplish the result for which it was created." *Id.* (internal quotation marks omitted).

Plaintiff's Consolidated Complaint does not allege that Defendants used the judicial process for a purpose other than the purpose for which it was created. *See Morn v. City of Phoenix*, 730 P.2d 873, 876 (Ariz. Ct. App. 1986) (noting extortion as a possible improper purpose). Instead, Plaintiff alleges Defendants prosecuted him without probable cause and with malice. But initiating litigation without justification does not suffice as an improper purpose. *See id.* ("Abuse of process . . . is not commencing an action or causing process to issue without justification.").

Second, even if Plaintiff did state a claim, the allegations in the Consolidated Complaint are substantially similar to those alleged in the complaints addressed by this Court and the Ninth Circuit, *compare* Doc. 1-2, ¶¶ 38-43 *and* Case No. CV-14-254, Doc. 18, ¶¶ 69-73 *with* Doc. 27-2, ¶¶ 41-47, both of which found Plaintiff's abuse of process claim barred by the applicable two-year statute of limitations. The Ninth Circuit affirmed Judge Sedwick's dismissal of the abuse of process claim as time-barred. Doc. 18-3 at 3.

Third, when Plaintiff filed an amended complaint in August 2014 with similar allegations (Case No. CV-14-254, Doc. 18, ¶¶ 69-73), the Court found the abuse of process claim barred by res judicata. Doc. 21 at 3. The Court noted that "[a]lthough Plaintiff alleges some additional facts in this case, those facts do not permit him to assert the claim for a second time." *Id*.

Count one will be dismissed against Mesa, Truchon, and Jacobs.

**C.     Count Two –** *Bivens* **Claim.**

Plaintiff brings a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against Truchon and Jacobs. Doc. 27-2,

¶¶ 48-51. He alleges the "actions taken by the Defendants in presenting false testimony as set forth in Count One to procure a conviction violated Plaintiff's Constitutional Rights," and that "Defendants were federal agents acting under color of federal authority based on the task force." *Id.*, ¶¶ 49, 50. As noted above, the Scope Certification does not apply to constitutional claims, and Truchon and Jacobs therefore remain Defendants in Count Two.

### 1. Truchon.

On February 2, 2015, the Court dismissed without prejudice Plaintiff's *Bivens* claim against Truchon. Doc. 21 at 9. The Court explained that the Supreme Court in *Iqbal* rejected "'supervisory liability' under *Bivens*, [and held] that supervisors 'may not be held accountable for the misdeeds of their agents.'" *Id.* (quoting 556 U.S. at 677). Rather, individuals may only "'be held liable [if] they themselves acted' in violation of [a] citizen's constitutional rights." *Id.* (quoting 556 U.S. at 683). Plaintiff's previous complaint had alleged that Truchon supervised, had direct knowledge of, and authorized Gordwin's actions during the investigation. Doc. 23, ¶¶ 7, 85. The Court found that Plaintiff "set forth no facts showing that Truchon had the knowledge attributed to him in these conclusory allegations . . . [and] thus fails to show that Truchon, through his own individual actions, violated Plaintiff's constitutional rights." Doc. 21 at 9.[4]

In his Consolidated Complaint, Plaintiff sets forth the same allegations the Court found deficient in the Second Amended Complaint. *Compare* Doc. 27-2, ¶¶ 6, 48-51, 85 *with* Doc. 23, ¶¶ 7, 48-51, 85. Because Plaintiff has presented no additional supporting factual allegations, the claim will be dismissed for reasons stated previously.

### 2. Jacobs.

A complaint "sufficiently sets forth the elements of a *Bivens* claim by alleging a violation of . . . constitutional rights by agents acting under the color of federal law."

---

[4] The Court notes that its previous order identifies Case No. 14-254, Doc. 18 as the relevant complaint. Truchon was not named in that version of Plaintiff's complaint, but was named in Plaintiff's Second Amended Complaint. The Court noted that "[b]ecause the proposed amendments do not alter the substance of Plaintiff's claims, the rulings in this order apply to Plaintiff's Second Amended Complaint." Doc. 21 at 2.

*Morgan v. United States*, 323 F.3d 776, 780 (9th Cir. 2003).  This claim appears to assert malicious prosecution in violation of the Fourth Amendment as the underlying constitutional violation, and thus the elements are the same as a malicious prosecution claim brought under § 1983.  *See Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) (noting that a plaintiff is required to plead the same elements for a malicious prosecution claim brought under either § 1983 or *Bivens*).  "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'"  *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.1995)).

Plaintiff satisfies the pleading requirements for a *Bivens* claim.  He alleges that Jacobs acted under color of federal law "based on the task force."  Doc. 27-2, ¶ 50.  As the Court concluded above, Jacobs was acting as a federal employee.  In addition, Plaintiff alleges that Jacobs violated his constitutional rights, "including those under the . . . Fourth, Fifth, Sixth and Eighth amendment[s]," by falsifying evidence and testimony to procure a conviction without probable cause.  Doc. 27-2, ¶ 49.  The Consolidated Complaint contains numerous allegations that Jacobs pressured witnesses into giving false testimony and provided benefits to those who cooperated.  *Id.*, ¶¶ 21-24.  These allegations give rise to a plausible inference that Jacobs' engaged in conduct that violated Plaintiff's constitutional rights.  The Court will not dismiss the *Bivens* claim against Jacobs.

### D.   Count Three – Malicious Prosecution Under § 1983.

Plaintiff brings a claim for malicious prosecution under § 1983 against Mesa, Truchon, and Jacobs.  Doc. 27-2, ¶¶ 52-57.  He alleges that these Defendants presented false testimony "to procure a conviction" and wrongfully instituted criminal proceedings without probable cause.  *Id.*, ¶¶ 53, 55.  Plaintiff asserts that the proceedings terminated in his favor and Defendants acted with the intent to deny his constitutional rights.  *Id.*,

¶¶ 55, 56. Truchon and Jacobs remain Defendants in this count.

The Ninth Circuit has recognized a § 1983 claim for "malicious prosecution with the intent to deprive a person of equal protection of the law or otherwise to subject a person to a denial of constitutional rights[.]" *Poppell v. City of San Diego*, 149 F.3d 951, 961 (9th Cir. 1998) (citing *Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987)); *see also Albright v. Oliver*, 510 U.S. 266 (1994). As noted above, "[i]n order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" *Awabdy*, 368 F.3d at 1066 (citing *Freeman*, 68 F.3d at 1189). "A criminal defendant may maintain a malicious prosecution claim not only against prosecutors but also against others – including police officers and investigators – who wrongfully caused his prosecution." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (citing *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)).

### 1. Mesa.

Municipalities and local government units are considered persons under § 1983 and may be liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). But a municipality "cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under [§ 1983] under a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002). Liability attaches only where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694; *Ulrich*, 308 F.3d at 984.

A municipality may be held liable under § 1983 when its employee's conduct was the result of (1) an expressly adopted official policy; (2) a longstanding practice or custom that constitutes the standard operating procedure of the municipality; (3) a

decision of an official (or a subordinate with delegated authority) who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in his area of decision; or (4) a municipality's failure to train its employees when the failure to train amounts to deliberate indifference to the rights of others. *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989). After proving one of the above methods of liability, the plaintiff must show that the challenged municipal conduct was both the cause in fact and the proximate cause of the constitutional deprivation. *See Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Plaintiff's only allegation relating to custom, policy or practice is that Mesa had a "well settled practice that informants would be paid or given better treatment if there was cooperation with the police officers." Doc. 27-2, ¶ 36. But under *Monell*, Plaintiff must allege that Mesa had a custom, policy, or practice of routinely prosecuting defendants without probable cause in order to deny them equal protection. Plaintiff's allegation gives rise to no such inference. Instead, it merely alleges that Mesa sometimes pays or provides benefits to witnesses or informants for their cooperation. There is nothing inherently unconstitutional in this allegation. Government entities routinely pay informants for their cooperation and provide benefits to witnesses who cooperate, such as offering plea deals. *See United States v. Levenite*, 277 F.3d 454, 461 (4th Cir. 2002) (noting that "there are several statutes that allow the government to pay informants and witnesses for their cooperation, services, and testimony"); *United States v. Cuellar*, 96 F.3d 1179, 1188 n.16 (9th Cir. 1996) (listing cases where government paid witnesses for testimony and finding that such agreements are not unconstitutional). Plaintiff accordingly fails to allege an unconstitutional custom, policy, or practice under *Monell*.

Moreover, Plaintiff's allegations regarding Mesa are conclusory and not entitled to a presumption of truth. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) ("To infer the existence of a city policy from the isolated misconduct of a single, low-

1 level officer, and then to hold the city liable on the basis of that policy, would amount to
2 permitting precisely the theory of strict *respondeat superior* liability rejected in
3 *Monell*."); *see also Johnson v. Brady*, No. CV-14-1875-PHX-DGC, 2015 WL 390794, at
4 4 (D. Ariz. Jan. 28, 2015) ("Merely stating that municipal employees violated Plaintiff's
5 constitutional rights and that this reflected a 'custom or practice' of the municipal
6 defendants does not 'plausibly suggest an entitlement to relief.'" (quoting *Starr v. Baca*,
7 652 F.3d 1202, 1216 (9th Cir. 2012))).[5]

The Court declines to grant Plaintiff leave to amend because he has repeatedly failed to remedy his defective pleading in this case. On July 20, 2012, Judge Sedwick dismissed Plaintiff's first *Monell* claim for failing to allege "that Jacobs acted in conformity with a City policy, custom, or practice." Doc. 13 at 3. On appeal, the Ninth Circuit permitted Plaintiff to "amend his *Monell* claim against the city because it is not clear on this record that he is unable to allege a policy, custom, or practice of the City under which Detective Jacobs acted." Doc. 18-3 at 4. Since that time, Plaintiff has filed three amended complaints, none of which alleged additional facts to support his *Monell* claim. *See* Docs. 23, 26, 27-2.[6] The only recognizable difference between the complaints is the addition of one paragraph containing the phrase "there was a well settled practice that informants would be paid or given better treatment if there was cooperation with the police officers." *Compare* Doc. 1-2 *and* Doc. 26 *with* Doc. 23, ¶ 36 *and* Doc. 27-2, ¶ 36. Certainly, the addition of one conclusory allegation – that fails to allege a constitutional violation – is not what the Ninth Circuit had in mind when it

---

[5] Plaintiff argues in his response that Jacobs was a final policymaker for purposes of *Monell* liability, but the complaint contains no such allegations. Plaintiff also cites *Webb v. Sloan* for the proposition that state district attorneys are final policymakers under § 1983 when they decide to prosecute a defendant. 330 F.3d 1158 (9th Cir. 2003). But Plaintiff's complaint does not allege that Mesa prosecutors were final policymakers. In fact, it specifically identifies Maricopa County as the prosecuting governmental entity. Doc. 27-2, ¶ 61. Last, to the extent that Plaintiff now argues that Mesa failed to properly train employees under *City of Canton v. Harris*, 489 U.S. 378 (1989), no such allegations are found in the complaint. *See* Doc. 42 at 9.

[6] And these are in addition to the largely duplicative claims asserted in CV-13-304-PHX-GWS, which is now on appeal.

- 12 -

permitted Plaintiff to amend his *Monell* claim. The Court concludes that four opportunities to plead a *Monell* claim are sufficient. The Court will not grant further leave to amend. Count three will accordingly be dismissed against Mesa.

### 2. Truchon.

Truchon is alleged to have been Gordwin's supervisor during the investigation. Doc. 27-2, ¶ 6. Because Truchon is specifically alleged to have been acting under color of federal law, not state law, Plaintiff has failed to state a claim under § 1983.

In addition, the Consolidated Complaint contains no allegations that Truchon took any direct actions in the investigation or had any other direct knowledge or involvement. The Court previously dismissed Plaintiff's *Bivens* claim against Truchon because it merely alleged supervisory liability. Doc. 21 at 9. Because the same analysis applies to this § 1983 claim, the Court will dismiss count three against Truchon. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### 3. Jacobs.

As noted above, the Court has found that Jacobs was acting as a federal employee during Plaintiff's investigation and that Plaintiff has stated a viable *Bivens* claim against Jacobs. Individuals acting under color of federal law cannot be held liable under § 1983 unless "they conspired or acted jointly with state actors to deprive the plaintiffs of their constitutional rights." *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir. 2001). But the Consolidated Complaint appears to allege a conspiracy only between Jacobs and Gordwin, both of whom were federal actors. There are no allegations of any personal involvement of any state actors, and Plaintiff names two Mesa employees based solely on their role as supervisors. Consequently, there are no allegations upon which the conduct of Jacobs can be attributed to the state, and the claim will be dismissed.[7]

---

[7] The Court notes that Plaintiff does not argue that Jacobs could be considered both a state and federal actor given his work on the joint task force. Even if he had, however, the argument would be rejected because "it is legally inconsistent to allow

- 13 -

### E.   Count Four – Malicious Prosecution Under State Law.

To establish malicious prosecution under Arizona law, Plaintiff must "prove damage by a criminal prosecution, which terminated in his favor, with defendant as prosecutor or complaining witness acting without probable cause and with malice." *Bearup v. Bearup*, 596 P.2d 35, 36 (Ariz. Ct. App. 1979).  "[T]he existence of probable cause is a complete defense to [a] claim[] of . . . malicious prosecution."  *Hockett v. City of Tucson*, 678 P.2d 502, 505 (Ariz. Ct. App. 1983).

#### 1.   Mesa.

Plaintiff alleges that Jacobs and Gordwin falsified evidence that formed the basis of the criminal prosecution.  Doc. 27-2, ¶ 60.  He alleges that Defendants acted with malice, that the charges lacked probable cause, and that the proceeding eventually terminated in his favor.  *Id.*, ¶¶ 59-61.  But for the false evidence, he alleges, the charges would not have been brought and he would not have spent eight years in prison.

Plaintiff appears to assert that Mesa is liable based solely on Jacobs' conduct. Plaintiff has not sued any city prosecutors in this action, nor does he allege any specific conduct on the part of Van Norman or Smith.  Thus, the Court finds that Plaintiff has failed to allege that Mesa was responsible for prosecuting Plaintiff, which is an essential element of his claim.  *See Bearup*, 596 P.2d at 36.  Indeed, Plaintiff alleges that he was "indicted by a Maricopa County Grand Jury for multiple felonies, trial commenced in Arizona Superior Court in Maricopa County[,]" and Gordwin, a federal officer, "caused the prosecution because he concocted the evidence, conducted the false investigation, submitted the false report and recommended charges to the Maricopa County Attorney's Office who then prosecuted Plaintiff with the testimony of Defendant Gordwin." Doc. 27-2, ¶¶ 25, 61.  Nowhere does Plaintiff allege that Mesa had anything to do with

---

simultaneous claims for violations of Section 1983 and *Bivens* against the same defendants.  The defendant officers are either state actors or federal actors – they cannot be both."  *Amoakohene v. Bobko*, 792 F. Supp. 605, 608 (N.D. Ill. 1992); *see also Aikman v. Cnty. of Westchester*, 691 F. Supp. 2d 496, 499 (S.D.N.Y 2010) (dismissing § 1983 claim once it was determined local police officers were federal actors and noting that "§ 1983 claims improperly filed against federal employees are routinely interpreted as properly pleaded under *Bivens*").

- 14 -

his prosecution other than employing Jacobs, whose conduct, as stated above, is attributable to the federal government. Consequently, count four will be dismissed against City of Mesa.

### 2. Truchon and Jacobs.

As stated above, the United States is substituted as the sole party defendant for Plaintiff's state common law claim against Jacobs and Truchon. The claim must now proceed under the FTCA against the United States. *See Lamagno*, 515 U.S. at 420. The Court finds, however, that it lacks subject-matter jurisdiction over the claim.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "In the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). "[T]he FTCA authorizes 'claims against the United States, for money damages . . . for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Id.* at 218 (quoting 28 U.S.C. § 1346(b)(1)). Although section 2680(h) of the FTCA preserves sovereign immunity for intentional torts committed by most federal employees, an exception has been carved out for intentional torts committed by federal "investigative or law enforcement officers." 28 U.S.C. § 2680(h); *see also Millbrook v. United States*, 133 S. Ct. 1441, 1443 (2013).

A jurisdictional prerequisite to "bringing suit against the United States under the [FTCA], of which the Westfall Act is part, [is that] a claimant 'must have first presented the claim, in writing and within two years after its accrual, to the appropriate federal agency, and the claim must have been denied.'" *Sharratt v. Murtha*, 437 F. App'x 167, 174 (3d Cir. 2011) (quoting *Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995) (citing 28 U.S.C. §§ 2401(b), 2675(a))). Plaintiff has failed to allege that he presented his claim to the FBI or other appropriate federal agency and that it was denied. Consequently, the Court must dismiss this claim for lack of subject-matter jurisdiction.

*See Johnson v. United States*, 704 F.2d 1431, 1442 (9th Cir. 1983) ("Exhaustion of the claims procedures established under the [FTCA] is a prerequisite to district court jurisdiction.").

### F.     Count Five – Conspiracy Under § 1985.

Plaintiff alleges that Jacobs conspired to "deprive the Plaintiff of the equal protection of the laws" by "presenting false evidence[.]" *Id.*, ¶ 66.  Plaintiff also alleges Jacobs "sought to punish Plaintiff for racial background" and "fed information to witnesses[.]" *Id.*, ¶ 67.

"An indispensable element of a claim under 42 U.S.C. § 1985(3) is some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirator's action[.]" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (citation omitted).  In its February 2, 2015 order, the Court dismissed this claim without prejudice, noting that Plaintiff's complaint contained "only the following race-related allegation: 'There was an invidiously discriminatory animus behind the conspiracy as defendants sought to punish plaintiff for racial background.'"  Doc. 21 at 5-6 (quoting Case 14-254, Doc. 18, ¶ 67).  The Court also found that the complaint "contain[ed] nothing about Plaintiff's race, the race of Defendants, the race of other participants in the state prosecution, or any other facts that would suggest that the wrongs alleged were in any way related to race." *Id.*, at 6.  Therefore, the Court declined to accept the allegation and dismissed the claim without prejudice so that Plaintiff could cure the pleading defect. *Id.*

Plaintiff failed to correct his deficient pleading.  The allegations on this issue in the Consolidated Complaint are exactly the same as those in the previous complaints. *Compare* Doc. 27-2, ¶¶ 65-68 *with* Doc. 23, ¶¶ 65-68 *and* Case No. 14-254, Doc. 18, ¶¶ 65-68.  The only difference is this paragraph in the Consolidated Complaint:

> Defendants agreed to bring forth charges knowing that they had fed information to witnesses, knowing that the two informants had a relationship and knowing at the time of trial that testimony was false about the [informants'] relationship and thus motivation.  Defendants further knew that the matter was a set-up to allow Donn Dove to kill Christopher Alexander and Byron Murphy and that there was no robbery that was to

occur.

Case No. 14-254, Doc. 18, ¶ 67. This allegation contains none of the facts the Court suggested would be required to plead a § 1985 claim. There is no mention of the Plaintiff's race, the race of Defendants, or any factual allegations that would suggest racial animus or motive on the part of Defendants. Accordingly, Plaintiff failed to cure his pleading defects and count five is dismissed against Jacobs.

**IT IS ORDERED:**

1. Defendant City of Mesa's motion to dismiss (Doc. 34) is **granted**.
2. Defendants United States, Truchon, and Jacobs' motion to dismiss (Doc. 36) is **granted in part** and **denied in part**.
3. The claims that remain in this case are as follows: counts one through five against Gordwin; counts one through three against Van Norman and Smith; and count two against Jacobs.

Dated this 29th day of April, 2015.

_____
David G. Campbell
United States District Judge