**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl West,<br><br>                Plaintiff,<br><br>v.<br><br>City of Mesa, et al.,<br><br>                Defendants. | No. CV-12-00657-PHX-DGC<br><br>**ORDER** |

Defendant Joe Gordwin has filed a motion to dismiss (Doc. 72) and a motion for summary judgment (Doc. 93). Defendants Duane Van Norman and Kelvin Smith have filed a joint motion to dismiss (Doc. 87). Defendants United States and Jeffrey Jacobs have filed a joint motion for summary judgment (Doc. 91), and a motion to strike Plaintiff's expert and expert report (Doc. 85). The motions are fully briefed, and no party has requested oral argument. The Court will grant in part and deny in part Gordwin's motion to dismiss, deny Gordwin's motion for summary judgment, grant Van Norman and Smith's motion to dismiss, grant the United States and Jacobs' motion for summary judgment, and grant the United States and Jacobs' motion to strike.

**I.  Background.**

The following facts are taken directly from the Court's April 29, 2015 order granting City of Mesa's motion to dismiss, and granting in part and denying in part the motion to dismiss of the United States, Brian Truchon, and Jeffrey Jacobs.

> In February 2003, Plaintiff Carl West was tried and convicted in state court of conspiracy to commit armed robbery. The lead investigator was former FBI Special Agent Joe Gordwin. Gordwin worked with Jeffery Jacobs, a Mesa Detective, on the FBI's Violent Street Gangs Task Force, a joint operation between the FBI and the Mesa Police Department. Supervisory Special Agent Brian Truchon was Gordwin's supervisor at the time.
>
> While West was in prison, an investigation revealed misconduct by Gordwin. On May 28, 2008, Gordwin was indicted for several crimes including wire fraud and witness tampering. Thereafter, West filed a motion for post-conviction relief, which was granted by the state court. As a result, West was released from prison on February 11, 2011. On August 22, 2013, all charges against him were dropped.
>
> On February 6, 2012, Plaintiff filed an action in state court alleging multiple violations relating to his investigation and trial. Doc. 1-2. The case was removed to this Court and assigned to Judge John Sedwick. In July 2012, a motion to dismiss by Defendants Mesa and Jacobs was granted. The ruling was appealed to the Ninth Circuit, which affirmed in part and vacated in part.
>
> On February 10, 2014, Plaintiff filed a second action in this Court (CV-14-254) that was eventually assigned to the undersigned judge. Given the overlap between the new case and Judge Sedwick's case, the two matters were consolidated as the present case. Plaintiff filed a motion for leave to file a Consolidated Complaint alleging nine counts against the United States, Gordwin, Truchon, Mesa, Jacobs, Duane Van Norman, and Kelvin Smith. The Court granted the motion for counts one through five, but denied leave to assert counts six through nine. Thus, only the following counts remain: (1) violation of 42 U.S.C. § 1983 – abuse of process, (2) violation of constitutional rights pursuant to *Bivens*, (3) violation of 42 U.S.C. § 1983 – malicious prosecution, (4) state law malicious prosecution, and (5) 28 U.S.C. § 1985 conspiracy.

Doc. 64 at 1-2 (internal citations omitted).

On May 18, 2015, the Court reinstated count four against the United States. Doc. 71 at 2. The claims remaining, therefore, are: (a) counts one through five against Gordwin, (b) counts one through three against Van Norman and Smith, (c) count two against Jacobs, and (d) count four against the United States. Doc. 27-2.

## II.     Legal Standards.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.     Gordwin's Motion to Dismiss.**

Gordwin seeks dismissal of all five claims alleged against him. These include: (1) § 1983 abuse of process, (2) *Bivens* violation, (3) § 1983 malicious prosecution, (4) state-law malicious prosecution, and (5) § 1985 conspiracy. Based on much of the same reasoning set forth in the Court's April 29, 2015 order, the Court will dismiss counts one, three, and five.

### A.     Section 1983 Abuse of Process.

Plaintiff alleges that "[t]he actions taken by the Defendants in presenting false testimony and evidence to procure a conviction violated Plaintiff's Constitutional Rights[.]" Doc 27-2, ¶ 42. He further alleges that Gordwin and the other Defendants "had an ulterior motive to wit: to kill Christopher Alexander and Byron Murphy . . . and they committed a willful act in the use of the process not in the regular conduct of the proceeding by using informants that were having a romantic relationship . . . ." *Id.*

The Court has already addressed these allegations with respect to other named Defendants in this case, finding that Plaintiff failed to allege the necessary elements of an abuse of process claim. Specifically, the Court found that Plaintiff failed to "allege that Defendants used the judicial process for a purpose other than the purpose for which it was created." Doc. 64 at 7 (citing *Morn v. City of Phoenix*, 730 P.2d 873, 876 (Ariz. Ct. App. 1986) (noting extortion as a possible improper purpose)). In addition, the Court noted that the allegations were "substantially similar to those alleged in the complaints addressed by this Court and the Ninth Circuit . . . both of which found Plaintiff's abuse of process claim barred by the applicable two-year statute of limitations." *Id.* The result is the same here. This claim will be dismissed against Gordwin.

### B.     *Bivens* Claim.

Plaintiff brings a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that the "actions taken by the Defendants in presenting false testimony as set forth in Count One to procure a conviction violated Plaintiff's Constitutional Rights," and that "Defendants were federal

- 4 -

agents acting under color of federal authority based on the task force." Doc. 27-2, ¶¶ 49, 50. The Court previously found that Plaintiff failed to state a claim against Truchon, but that Plaintiff adequately alleged a *Bivens* claim against Jacobs. The Court finds Plaintiff has stated a *Bivens* claim against Gordwin.

A complaint "sufficiently sets forth the elements of a *Bivens* claim by alleging a violation of . . . constitutional rights by agents acting under the color of federal law." *Morgan v. United States*, 323 F.3d 776, 780 (9th Cir. 2003). As an FBI Special Agent, Gordwin was acting under color of federal law. Plaintiff alleges Gordwin and Jacobs conspired to "implicate, arrest and prosecute Mr. West and Mr. Alexander in the warehouse robbery without probable cause." Doc. 27-2, ¶ 19. Plaintiff further alleges Gordwin carried on an affair with a witness in Plaintiff's case. *Id.*, ¶ 20. As the Court noted in its previous order, the complaint "contains numerous allegations that Jacobs pressured witnesses into giving false testimony and provided benefits to those who cooperated." Doc. 64 at 9. These allegations are sufficient to allege an underlying constitutional violation – malicious prosecution without probable cause in violation of the Fourth Amendment. *Id.* at 8-9. Because Gordwin is alleged to have taken part in procuring false testimony and conspiring with Jacobs, "[t]hese allegations give rise to a plausible inference that [Gordwin] engaged in conduct that violated Plaintiff's constitutional rights." *Id.*

Gordwin argues that individuals acting under the color of federal law cannot be held liable under § 1983. This argument is off-point. Plaintiff seeks relief in this count under *Bivens*, not § 1983, and *Bivens* provides a cause of action for individuals whose constitutional rights are violated by federal actors. Gordwin was a federal actor, and Plaintiff sufficiently alleges an underlying constitutional violation. The Court will not dismiss this claim against Gordwin.

### C. Section 1983 Malicious Prosecution.

Plaintiff alleges Gordwin and other Defendants maliciously prosecuted him by obtaining false testimony "to procure a conviction" and wrongfully instituting criminal

- 5 -

proceedings without probable cause in violation of § 1983.  Doc. 27-2, ¶¶ 52-57.  In its prior opinion, the Court dismissed this claim against Jacobs because he was acting under federal law pursuant to his role on the joint task force.  Doc. 64 at 13.  The Court also noted that Plaintiff "appears to allege a conspiracy only between Jacobs and Gordwin, both of whom are federal actors." *Id.*  Individuals acting under color of federal law may be held liable under § 1983 only if "they conspired or acted jointly with state actors to deprive the plaintiffs of their constitutional rights."  *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir. 2001).  Plaintiff makes no such allegations, and even if he did, "it is legally inconsistent to allow simultaneous claims for violations of Section 1983 and *Bivens* against the same defendants."  *Amoakohene v. Bobko*, 792 F. Supp. 2d 496, 499 (S.D.N.Y. 2010).  This claim will be dismissed against Gordwin.

### D.     State-Law Malicious Prosecution.

To establish malicious prosecution under Arizona law, Plaintiff must "prove damage by a criminal prosecution, which terminated in his favor, with defendant as prosecutor or complaining witness acting without probable cause and with malice." *Bearup v. Bearup*, 596 P.2d 35, 36 (Ariz. Ct. App. 1979).  "[T]he existence of probable cause is a complete defense to [a] claim[] of . . . malicious prosecution." *Hockett v. City of Tucson*, 678 P.2d 502, 505 (Ariz. Ct. App. 1983).

Plaintiff alleges that Gordwin falsified evidence that formed the basis of the criminal prosecution, that the charges lacked probable cause, and that the proceeding eventually terminated in his favor because he was released from prison.  Doc. 27-2, ¶¶ 59-61.  But for Gordwin's illegal conduct, he alleges, the charges would not have been brought and he would not have spent eight years in prison.

Gordwin argues that the criminal proceedings did not terminate in Plaintiff's failure.  He asserts that Plaintiff was released on a technicality.  The state court explained that the "dismissal is not based on the merits of the case, but is based upon the inability to secure all necessary witnesses for trial."  Case No. 14-254, Doc. 49-1 at 50.  But this is an evidentiary argument that cannot be raised on a motion to dismiss.  Plaintiff has alleged

facts sufficient to state a claim for malicious prosecution, and, in ruling on a motion to dismiss, the Court must accept those allegation as true.

Gordwin argues he did not prosecute Plaintiff and that Plaintiff cannot overcome the general rule of prosecutorial independence.  It is well-established, however, that "[m]alicious prosecution actions are not limited to suits against prosecutors but may be brought . . . against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).  "[T]he presumption of prosecutorial independence does not bar a [malicious prosecution] claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him . . . or otherwise engaged in wrongful or bad faith conduct[.]"  *Id.* at 1067; *see also Medrano v. City of Phoenix*, 2014 WL 5494931, at 4 (Ariz. Ct. App. Oct. 30, 2014) ("a person is a 'prosecutor' if he or she initiated the criminal prosecution without probable cause (including through an indictment, complaint, arrest warrant or by actual arrest) or continued proceedings without probable cause").  Here, Plaintiff alleges that Gordwin knowingly provided false evidence to the prosecutor and engaged in other bad faith conduct during Plaintiff's investigation.  These allegations are sufficient.

Gordwin also argues that Plaintiff failed to allege that he acted with malice, but this is contradicted by Plaintiff's allegations regarding Gordwin's bad faith conduct, procurement of false testimony, and alleged scheme to have a witness murdered. Doc. 27-2, ¶¶ 18-20, 27.  The Court must accept these allegations as true when ruling on a motion to dismiss.

Lastly, Gordwin asserts that Plaintiff failed to demonstrate a lack of probable cause.  He argues that the Maricopa County grand jury indicted Plaintiff, which serves as conclusive evidence of probable cause and thus bars a subsequent malicious prosecution claim.  As the Ninth Circuit noted in *Harris v. Roderick*, "[t]he argument here is, in essence, that if a conspiracy to lie is so successful that on the basis of the lies a grand jury finds probable cause, the conspirators become immunized for the constitutional injury they have caused."  126 F.3d 1189, 1198 (9th Cir. 1997).  Plaintiff alleges that the

1  probable cause that served as the basis for his indictment was tainted by the actions of
2  Gordwin and Jacobs. Consequently, the state court's indictment does not preclude
3  Plaintiff's claim. *See id.* ("a finding of probable cause that is tainted by the malicious
4  actions of government officials . . . does not preclude a claim against the officials
5  involved" (internal quotation marks and citations omitted)). The Court will not dismiss
6  this claim against Gordwin.

### E. Section 1985 Conspiracy.

Plaintiff alleges that Gordwin conspired to "deprive the Plaintiff of the equal protection of the laws" by "presenting false evidence" in violation of 42 U.S.C. § 1985. *Id.*, ¶ 66. Plaintiff also alleges Jacobs "sought to punish Plaintiff for racial background" and "fed information to witnesses[.]" *Id.*, ¶ 67. But "[a]n indispensable element of a claim under 42 U.S.C. § 1985(3) is some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirator's action[.]" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (citation omitted). The Court has already found that Plaintiff failed to allege a racial or class-based motivation for the conspiracy. *See* Doc. 64 at 16-17 (noting that Plaintiff failed to allege "Plaintiff's race, the race of Defendants, or any factual allegations that would suggest racial animus or motive on the part of Defendants"). This claim will be dismissed against Gordwin.

### IV. Gordwin's Motion for Summary Judgment.

Gordwin has filed a motion for summary judgment and a separate statement of facts in support (Docs. 93, 94), but the motion presents no factual arguments, cites no evidence, and reiterates the same arguments set forth in his motion to dismiss (Doc. 72). Gordwin has failed to show that the remaining claims against him must be resolved in his favor on the basis of undisputed facts. The motion will be denied.

### V. Van Norman and Smith's Motion to Dismiss.

Van Norman and Smith seek dismissal of Plaintiff's claims for (1) § 1983 abuse of process, (2) *Bivens* violation, and (3) § 1983 malicious prosecution. Plaintiff alleges that Van Norman and Smith "were at all relevant times the supervisors of Defendant Jacobs

1 during his time putting together the prosecution of Plaintiff." Doc. 27-2, ¶ 7. Plaintiff further alleges they "approved the cooperation between Jacobs and Gordwin [and] approved the payment and favors for the witnesses[.]" *Id.*, ¶ 45. There are no allegations that either Van Norman or Smith had any personal involvement other than as supervisors.

With respect to the abuse of process claim, the Court has already found that this claim fails because Plaintiff failed to allege an essential element of the claim – improper purpose. The allegations against Van Norman or Smith are no different, and this claim will be dismissed.

With respect to all three claims, the fact that Plaintiff alleges mere supervisory liability against Van Norman and Smith mandates dismissal. Defendants note that the Court has already found that "there are no allegations of any personal involvement of any state actors, and Plaintiff names two Mesa employees based solely on their role as supervisors." Doc. 64 at 7, 13. Indeed, the Court dismissed these claims against Defendant Truchon because Plaintiff failed to allege Truchon "took any direct actions in the investigation or had any other direct knowledge or involvement." *Id.* at 7, 13. The allegations set forth against Van Norman and Smith are no different.

In his brief, Plaintiff argues that Smith was so extensively involved in the task force that he was only "in the office one day per week maximum." Doc. 95 at 8. Further Plaintiff asserts Smith "created the agendas, which directed the subordinates to make specific acts and ensured that those acts were done with[in] a certain time frame." *Id.* But these allegations are not found in Plaintiff's consolidated complaint. And even if they were, they are still insufficient to show that Smith personally took any acts that violated Plaintiff's constitutional rights. There is no detail as to what "acts" Smith took or whether they involved Plaintiff at all. These vague allegations are insufficient to state a claim under *Bivens*. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 claims, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Plaintiff's claims under *Bivens* and § 1983 will be dismissed.

- 9 -

**VI.     The United States and Jacobs' Motion for Summary Judgment.**

The United States and Jacobs move for summary judgment on count two, the *Bivens* violation against Jacobs, and count four, the state-law malicious prosecution claim brought under the Federal Tort Claims Act ("FTCA") against the United States.  Doc. 91. Both claims turn on whether Plaintiff can establish the elements of a claim for malicious prosecution.  Because the elements necessary to establish such a claim are substantially similar under both federal and Arizona law, and because the same defenses apply to both claims, the Court will analyze the claims together.

**A.     Undisputed Relevant Facts.**

The events leading up to Plaintiff's conviction began in 2002.  During this time, the Violent Street Gangs Task Force, to which both Gordwin and Jacobs were detailed, began investigating Dwayne Askins in the "Lonely Heights" investigation.  Doc. 92, ¶ 6. The Task Force used Title III wire intercepts, information from a confidential informant ("CI"), corroborating information from a cooperating witness, and surveillance to build their case.  Eventually, the Task Force discovered a plan to rob a warehouse in West Phoenix, which involved Askins, Plaintiff, and several other individuals.

At 9:00 am on June 20, 2002, Gordwin and Jacobs arrested Shawna Hrbal, the girlfriend of Christopher Alexander, one of the suspects in the attempted warehouse robbery.  *Id.*, ¶ 18.  Hrbal agreed to cooperate and provide information about Alexander if the officers would help her out with an outstanding warrant.  *Id.*, ¶ 20.  At that time, Alexander and Hrbal were living together, and Plaintiff was their roommate.  *Id.*, ¶ 22. Hrbal told the officers that Alexander and Plaintiff had a "big job" planned for that night, and agreed to provide information about the other participants.  *Id.*, ¶¶ 21-23.  She stated that she heard Alexander talking about the planned robbery and that the participants were to meet at Ahmad Lunsford's apartment at 6:00 pm.  *Id.*, ¶ 24.

That afternoon, the CI informed Gordwin that Alexander had called him about participating in the robbery and that he was going to meet at Lunsford's apartment.  *Id.*, ¶ 27.  He also gave the cross-streets as to where the warehouse was located.  *Id.*  Around

1  4:00 pm, Hrbal, Alexander, and Plaintiff drove to Lunsford's apartment. *Id.*, ¶ 28. A
2  surveillance team monitored the apartment, and SWAT teams were stationed outside the
3  warehouse. *Id.*, ¶¶ 33-35.

4        Around 5:35 pm, the air surveillance unit observed a white Nissan Altima leave
5  Lunsford's apartment and drive to a car wash in Chandler. *Id.*, ¶ 36. The car wash was
6  robbed by two suspects, who stole over a thousand dollars in cash and the car wash
7  employees' wallets. *Id.*, ¶¶ 36, 37. One of the credit cards from the employees was used
8  by one of the suspects before returning to Lunsford's apartment. *Id.*, ¶¶ 37, 38. The CI
9  confirmed that the robbery was committed by Alexander, Plaintiff, and two other men.
10 *Id.*, ¶ 40. Plaintiff's name was provided to Chandler police, who then created a photo
11 lineup and showed it to the car wash employees, who ultimately identified Plaintiff as
12 one of the perpetrators. *Id.*, ¶¶ 41, 42. Hrbal also confirmed Plaintiff's participation in
13 the car wash robbery. *Id.*, ¶ 43.

14       That night, the warehouse robbery was aborted because the warehouse was closed,
15 but the officers learned that an attempt would be made the next night. *Id.*, ¶ 49. On
16 June 21, the CI, Alexander, and Plaintiff drove to the warehouse so each individual knew
17 the exact location. *Id.*, ¶ 53. When they showed up, a Phoenix detective assigned to
18 survey the warehouse recognized Plaintiff in the CI's van. *Id.*, ¶ 54. Later that night, the
19 suspects drove in a caravan to the warehouse. When they arrived, they noticed several
20 police cars and attempted to flee. *Id.*, ¶ 69. Plaintiff, Alexander, and two other suspects
21 were in a van driven by the CI, who successfully evaded police. *Id.*, ¶ 77. Surveillance
22 observed the CI dropping Plaintiff, Alexander, and Askins back at Lunsford's apartment
23 at 9:38 pm. *Id.*, ¶ 78. Shortly thereafter, Plaintiff and Alexander were arrested and
24 questioned. *Id.*, ¶ 79. Plaintiff denied any involvement, stating that he had been at
25 Lunsford's apartment just to relax and play video games. *Id.*, ¶ 81. He was released
26 around 2:30 am. *Id.*, ¶ 84.

27       After reviewing the wiretaps, Jacobs discovered several phone conversations
28 relating to the robbery that specifically mentioned Plaintiff by name. *Id.*, ¶¶ 86-88.

Gordwin and Jacobs then met with the CI, who confirmed Plaintiff's participation in both the car wash robbery and the warehouse robbery. *Id.*, ¶ 89. Police surveillance corroborated this information. *Id.* A few days later, Hrbal identified Plaintiff, Alexander, Askins, and other individuals through photos and described the events of June 20 and June 21. *Id.*, ¶¶ 90-116. Hrbal directly implicated Plaintiff in both robberies, stating that Plaintiff had told her he was "screwed" because he did not wear a mask during the car wash robbery. *Id.*, ¶¶ 102, 107, 114.

Plaintiff was charged with conspiracy to commit armed robbery and was arrested. During his questioning, he admitted that he was at Lunsford's apartment on June 20 and mentioned that there was supposed to be a lot of money and drugs to split from the warehouse. *Id.*, ¶¶ 117-123. Plaintiff was indicted by a Maricopa County grand jury and convicted after a trial. *Id.*, ¶¶ 125, 145. Plaintiff later pled guilty to the car wash robbery. *Id.*, ¶ 149.

In May 2008, Gordwin was indicted for actions he took in 2005 to cover-up an affair with Shannon Murphy, the wife of one of the individuals involved in the warehouse robbery, Byron Murphy. *Id.*, ¶ 152. The indictment against Gordwin alleged no wrongdoing during the investigation of the warehouse robbery. *Id.*, ¶ 155. As a result, however, Plaintiff's motion for post-conviction relief was granted by the state court, and, although the prosecution intended to retry Plaintiff, it could not locate several key witnesses to testify. *Id.*, ¶ 166.

**B.      Analysis.**

"The basis of a *Bivens* action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right." *Balser v. Dept. of Justice, Office of the United States Trustee*, 327 F.3d 903, 909 (9th Cir. 2003). In order to establish malicious prosecution in the *Bivens* context, "a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" *Awabdy*, 368 F.3d at 1066 (citing *Freeman v. City of Santa*

1  *Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)). "A criminal defendant may maintain a malicious prosecution claim not only against prosecutors but also against others – including police officers and investigators – who wrongfully caused his prosecution." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (citing *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)).[1]

### 1. Probable Cause.

Under both federal and Arizona law, the "existence of probable cause is a complete defense to [a] claim[] of . . . malicious prosecution." *Hockett*, 678 P.2d at 505; *see also Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054-55 (9th Cir. 2009) ("[P]robable cause is an absolute defense to malicious prosecution."). "Probable cause exists when, 'under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability' that a crime was committed." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)). A grand jury indictment constitutes *prima facie* evidence of probable cause. *See Awabdy*, 368 F.3d at 1067. A plaintiff can overcome this finding "by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id.*

Plaintiff was indicted by a Maricopa County grand jury, which raises a rebuttable presumption that probable cause existed. Plaintiff fails to rebut this presumption. He has provided no evidence that his prosecution was based on fabricated evidence or any improper conduct on the part of Jacobs or any other Defendant.

Plaintiff argues that Jacobs coerced testimony from key witnesses, relied on information from two informants who were having an affair, and paid witnesses for their testimony. Doc. 98 at 11. But Plaintiff mischaracterizes the evidence and fails to

---

[1] The elements for malicious prosecution under Arizona law include: (1) damage by a criminal prosecution, (2) which terminated in the plaintiff's favor, (3) with defendant as prosecutor or complaining witness, (4) without probable cause, and (5) malice. *Bearup*, 596 P.2d at 36. The only significant departure from federal law is that Arizona has a "favorable termination" requirement, which the Court will address.

- 13 -

1  demonstrate improper conduct by Jacobs.  The record is devoid of evidence that Jacobs
2  lied to prosecutors, coerced testimony from witnesses, or withheld or fabricated evidence.

3  Plaintiff asserts "Jacobs became aware of the affair between [the CI] and Hrbal
4  and also always knew that they were dating."  Doc. 98 at 2.  But the evidence Plaintiff
5  cites in support only shows that Hrbal told Jacobs that "I dated [him]" one time.  Doc. 99-
6  2 at 43.  That was the extent of the conversation, and Jacobs did not inquire further.
7  What is more, the fact that two witnesses had previously dated at an unknown time does
8  not undermine their testimony.  Plaintiff provides no evidence that this led Hrbal or the
9  CI to provide false testimony against him.

10  Plaintiff also claims that Jacobs coerced testimony from Hrbal because he filled in
11  Plaintiff's last name during an interview.  But Hrbal had already identified Plaintiff by
12  his nickname ("Hitman") and first name (Carl), and there is no evidence that Jacobs
13  coached Hrbal to testify falsely.  *See* Doc. 92-3 at 144.  Providing a suspect's last name to
14  a witness who is already familiar with that suspect does not constitute coerced testimony.
15  There is simply no evidence that Jacobs engaged in any improper interrogation
16  techniques.

17  In addition, there is no evidence that any witnesses were paid to provide false
18  testimony.  Paying witnesses for their cooperation is not unlawful.  In fact, "there are
19  several statutes that allow the government to pay informants and witnesses for their
20  cooperation, services, and testimony."  *United States v. Lenenite*, 277 F.3d 454, 461 (4th
21  Cir. 2002).  Paying witnesses to provide *false testimony* would be unlawful, but Plaintiff
22  provides no evidence that Hrbal, Dove, or any other witness was paid with the specific
23  purpose of providing false testimony.[2]

24  Even in the absence of the grand jury indictment, the record indicates that clear
25  probable cause existed to prosecute Plaintiff.  Jacobs and the task force relied on
26  substantial evidence obtained from legal wiretaps that specifically mentioned Plaintiff's

---

28  [2] Plaintiff also claims Hrbal only provided her cooperation if Jacobs would "try to take care of her warrant."  Doc. 98 at 3.  But again, there is nothing unlawful about offering benefits to witnesses who cooperate with police investigations.

- 14 -

involvement in the robbery. Doc. 92, ¶¶ 87-88. Both Hrbal and Dove confirmed Plaintiff's involvement and meetings with other conspirators. *Id.*, ¶¶ 89, 90-116. And an employee of the car wash identified Plaintiff as one of the assailants in the car wash robbery, which was also confirmed by Hrbal and occurred the day before the warehouse robbery. *Id.*, ¶ 42. In fact, after he was arrested, Plaintiff made statements indicating that he participated. Although he did not confess fully, he stated that he "chose to be there" when referring to the warehouse, and he confirmed that everyone was supposed to get a cut of the money from the robbery. Doc. 92-4 at 34, 50. Based on this evidence, a reasonable officer would have found a fair probability that Plaintiff was involved in the warehouse robbery.[3]

### 2. Malice.

Malice is present where the defendant "initiate[d] or procure[d] the proceedings . . . primarily for a purpose other than that of bringing an offender to justice[.]" *Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1107 (D. Ariz. 2013) (internal quotations omitted). Jacobs had probable cause to believe Plaintiff participated in the warehouse robbery. The record is devoid of any evidence that Jacobs harbored any ill will towards Plaintiff or sought to prosecute him purely out of spite. Plaintiff cannot establish this element.

### 3. Conclusion.

Plaintiff has failed to demonstrate a genuine dispute of fact regarding several elements of his claims. Consequently, the Court will grant summary judgment in favor of Jacobs on count two and the United States on count four.[4]

---

[3] The presumption of prosecutorial independence also bars Plaintiff's claims. This presumption can be overcome with evidence "that the district attorney was subjected to unreasonable pressure by the police officers, or that the officers knowingly withheld relevant information with the intent to harm [plaintiff], or that the officers knowingly supplied false information." *Newman v. Cty. of Orange*, 457 F.3d 991, 994 (9th Cir. 2006). Plaintiff provides no such evidence.

[4] Plaintiff also cannot establish the element of favorable termination regarding his state-law claim for malicious prosecution. Under Arizona law, "[w]hen a termination or dismissal indicates in some fashion that the accused is innocent of the wrongdoing it is a favorable termination. However, if it is merely a procedural or technical dismissal it is not favorable." *Frey v. Stoneman*, 722 P.2d 274, 278 (Ariz. 1986). The state court dismissed Plaintiff's case because they could not locate several key witnesses from a

**VII.  The United States and Jacobs' Motion to Strike.**

The United States and Jacobs move to strike Plaintiff's expert report for two reasons: (1) it is untimely, and (2) it is not based on any scientific method or analysis and does not set forth any conclusions.  Defendants argue the report is "nonsensical" and nothing more than "a litany of thoughts and questions."  The Court agrees.

Rule 26(a)(2)(B) requires that an expert disclosure "be accompanied by a written report – prepared and signed by the witness[.]"  The report must contain "a complete statement of all opinions" proffered by the expert, as well as "the facts or data considered by the [expert] in forming them[.]"  Fed. R. Civ. P. 26(a)(2)(B)(i), (ii).  Expert disclosures must be timely made in accordance with court-imposed deadlines.  Fed. R. Civ. P. 26(a)(2)(D).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  This sanction has been described by courts as a "self-executing, automatic sanction to provide a strong inducement for disclosure of material." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

On February 18, 2015, the Court issued a revised case management order which required that Plaintiff provide full and complete Rule 26 expert disclosures by April 10, 2015.  Doc. 29 at 3.  Defendants were required to disclose their expert reports by May 8, 2015, and Plaintiff's rebuttal disclosures were due no later than May 29, 2015.  *Id.*  Plaintiff made no initial expert disclosures.  Defendants disclosed their expert report on May 8 and sent the report to Plaintiff.  Doc. 67.  On May 29, in response to Defendants' disclosures, Plaintiff filed a notice identifying his expert witness, Edward Vaughn, a licensed therapist.  Doc. 73.  No expert report or other documents accompanied the notice, and it is undisputed that nothing was sent to Defendants.  Plaintiff sent the expert

---

crime that occurred nearly a decade earlier.  Indeed, the state court noted in its order that "dismissal is not based on the merits of the case, but is based upon the inability to secure all necessary witnesses for trial."  Case No. 14-254, Doc. 49-1 at 50.  This disposition does not suggest that Plaintiff was innocent of the charge.  Thus, he cannot satisfy this element, and this is an alternate basis to dismiss count four.

- 16 -

report to Defendants on June 12. Doc. 81. Shortly thereafter, Defendants filed this motion to strike.

The Court will strike the report for two reasons. First, it is untimely. Plaintiff filed a notice disclosing the identity of his rebuttal expert on May 29, but Rule 26(a) requires far more than mere identification of an expert. Plaintiff was required to disclose a report that included a statement of all expert opinions and the facts and data underlying those opinions. *See* Fed. R. Civ. P. 26(a)(2)(B). Plaintiff did not file the report until nearly two weeks later, and thus failed to comply with both Rule 26 and the Court's case management order which emphasized that the disclosure deadlines were real and would be enforced. *See* Doc. 29; CV-14-254, Doc. 44. As Defendants noted, accepting the report will further delay this already prolonged case and may lead to further expert disclosures and depositions of expert witnesses, resulting in increased costs and expenses for the parties. What is more, Plaintiff does not even attempt to explain his failure to comply with Rule 26 or the Court's order, and the Court therefore cannot determine that Plaintiff's failure was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1); *see also Food Servs. of Am., Inc. v. Carrington*, No. CV-12-00175, 2013 WL 4507593, at *17 (D. Ariz. Aug. 23, 2013) (striking untimely expert disclosures where party never "requested the Court to extend the deadlines for expert disclosures").

Second, even if it was timely, the report fails to comply with Rule 26(a)(2)(B). The report of Mr. Vaughn consists of fifteen pages of thoughts and questions regarding the psychiatric evaluation submitted by Defendants' expert. No conclusions are listed, and in several instances the report does not even use complete sentences or proper punctuation or grammar. In fact, most of the notes are in the form of questions. It is difficult to discern any professional opinions from these notes. For example, he writes:

> 18. Antisocial Personality Disorders……aren't they like white collar criminals??? People with Antisocial Personal Disorders are very employable….aren't they???? They are pretty good cons….right?
>
> 19. Isn't it true that Section I, Page 27, 28 and page 29 list numerous mental health professionals that diagnose Mr. West as experiencing

- 17 -

> psychotic symptoms?
>
> 20.  Yet in Section I, Page 30 "Dr. Pitt does not find fault with the treatment that they provide Mr. West" because "they did not have the benefit of seeing all of the information he reviewed"?
>
> (Don't doctors give blood test when people like Mr. West come into the ER or the clinic to rule out substance abuse? Isn't that the first thing they expect to rule out?  Why would you create a 'red herring' to mislead the jury and imply that in the 3.4 hour interview you knew more than they? They wouldn't need a lot of history would they to determine as you did caused by "illicit substance abuse"? They aren't stupid are they????)

Doc. 85-1 at 8.  Mr. Vaughn further states:

> I worked for state government for twelve (12) years and I was always alarmed when state employees began to view themselves in opposition to the people (we versus them) instead of seeing themselves as serving the people. I think when state employees make a mistake they should apologize….I'm not feeling that apology here. It reminds me of when the Catholic Church opposed those who the Church abused as children instead of demonstrating remorse.

*Id.* at 19.  In what appears to be the only opinion offered, Mr. Vaughn states:

> In regard to the impact of incarceration, in my professional opinion, in addition to the aforementioned effects, the loss of freedom and liberty is the greatest loss anyone could suffer. That loss has already been evaluated and assessed by the number of American Soldiers that have given their lives to protect Mr. West's freedom. One must ask what they would pay to avoid being wrongfully imprisoned for eight years? Perhaps a better question is what would one pay to avoid one of their children being wrongfully imprisoned by the state?

*Id.* at 20.  This is not a professional opinion.

This report utterly fails to comply with Rule 26(a)(2)(B).  It does not contain a statement of any opinions, the basis for those opinions, or any underlying data or analysis.  There is no logical line of reasoning – the report simply lists the expert's spontaneous thoughts and questions recorded while he was reviewing Defendants' expert report.  The report will be stricken.

**IT IS ORDERED**:

1. Gordwin's motion to dismiss (Doc. 72) is **granted in part and denied in part**.
2. Gordwin's motion for summary judgment (Doc. 93) is **denied**.
3. Van Norman and Smith's motion to dismiss (Doc. 87) is **granted**.
4. The United States and Jacobs' motion for summary judgment (Doc. 91) is **granted**.
5. The United States and Jacobs' motion to strike (Doc. 85) is **granted**.
6. The only remaining claims are counts two and four against Gordwin.
7. The Court will set a final pretrial conference by separate order.

Dated this 8th day of September, 2015.

_____
David G. Campbell
United States District Judge